**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

YU CEN ZHENG, individually and on behalf
of all other employees similarly situated,

Plaintiff,

v.

NJ GREAT WALL, LLC, and NICKY LIU,

Defendants.

Civil Action No. 21-16350 (GC) (RLS)

**MEMORANDUM OPINION**

**CASTNER, U.S.D.J.**

     **THIS MATTER** comes before the Court upon the renewed joint motion for approval of the proposed settlement agreement (*see* ECF Nos. 30 & 34) submitted by Plaintiff Yu Cen Zheng and Defendants NJ Great Wall, LLC, and Nicky Liu, which resolves Plaintiff's wage-and-hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. §§ 34:11-56a, *et seq.*, for alleged unpaid overtime and minimum wage. (ECF No. 1 ¶¶ 43-74.) For the reasons set forth herein, and other good cause shown, the joint motion is **GRANTED** and the settlement agreement (*see* ECF No. 34-1 at 1-8[1]) is **APPROVED**.

---

[1]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

I.      **BACKGROUND**

This wage-and-hour dispute stems from Plaintiff's employment as a "fry wok cook and helper" at Great Wall, a restaurant in Neptune City, New Jersey. (ECF No. 1 ¶¶ 7-8.) Plaintiff was employed at Great Wall from about October 6, 2020, to April 5, 2021, and he alleges that despite working more than seventy hours per week, he did not receive overtime pay and was compensated at a fixed rate of $3,000.00 per month. (*Id.* ¶¶ 27-29.)

On August 31, 2021, Plaintiff brought suit individually and on behalf of a putative class of similarly situated individuals who were employed by Defendants[2] within a three-year period and who allegedly "failed to receive overtime compensation for all hours worked in excess of forty (40) hours per week."[3] (*Id.* ¶ 37.) Defendants answered the Complaint and asserted affirmative defenses on January 21, 2022. (ECF No. 13.)

Following mediation overseen by the Court, the parties reported on August 23, 2022, that they had reached a settlement in principle. (ECF No. 28.) Two months later, on October 28, 2022, the parties submitted a joint motion for approval of their proposed settlement, which resolved Plaintiff's claims individually and no longer purported to be on behalf of other employees at Great Wall. (ECF No. 30.) After the Court initially raised concerns with the breadth of the release provision in the proposed settlement and gave the parties time to address the concerns (*see* ECF No. 33), the parties submitted a revised settlement on May 17, 2023, and renewed their motion for

---

[2]      On May 3, 2023, the Court entered a stipulation that corrected the caption and dismissed certain Defendants that had been named in the original Complaint. (*See* ECF No. 32.)

[3]      Although the Complaint initially asserted claims on behalf of a putative collective, the settlement reached is between Plaintiff in his individual capacity and Defendants, and Plaintiff represents that he "is no longer seeking to assert claims on behalf of a[] putative collective action class." (ECF No. 30-2 at 2.)

joint approval (*see* ECF Nos. 30 & 34).

The settlement would resolve and dismiss Plaintiff's claims in exchange for Defendants making a one-time payment of $11,500.00, which consists of $7,130.67 payable to Plaintiff and $4,369.33 payable to Plaintiff's counsel for attorney's fees and costs.  (ECF No. 34-1 at 1-8.)  The parties jointly maintain that the settlement is a "fair" and "reasonable compromise" of the claims in dispute and that the Court should approve it.  (ECF No. 30-1 at 3-6.)

## II.    LEGAL STANDARD

### A.  FLSA Settlements

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract," and it "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA." *Genesis Healthcare Corp v. Symczyk*, 569 U.S. 66, 69 (2013).  Employers that violate the FLSA's guarantees are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *David v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting 29 U.S.C. § 216(b)).

FLSA claims can be settled in one of two ways: "(i) with the Department of Labor supervising the payment of unpaid minimum wages or overtime compensation under 29 U.S.C. § 216(c); or (ii) with the district court's approval of a settlement agreement under 29 U.S.C. § 216(b)." *Morales v. Unique Beginning Caterers Ltd. Liab. Co.*, Civ. No. 20-10026, 2021 WL 5864061, at *1 (D.N.J. Dec. 10, 2021).[4]  To approve a proposed settlement of FLSA claims, the

---

[4]      Plaintiff also asserted claims under the NJWHL, but "court approval of a settlement of those state law claims is not required." *Davis v. Essex Cnty.*, Civ. No. 14-1122, 2015 WL 7761062, at *2 n.1 (D.N.J. Dec. 1, 2015).

court must find "that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016) (quoting *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012)); *see also Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982). To make this finding, courts in this Circuit assess "whether the compromise is fair and reasonable to the employee, and whether the compromise otherwise frustrates the implementation of the FLSA." *Morales*, 2021 WL 5864061, at *1 (citing *Gabrielyan v. S.O. Rose Apartments LLC*, Civ. No. 15-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015)).

III.   **DISCUSSION**

A.     **Bona Fide Dispute**

In view of what has been presented, the Court is satisfied that the settlement resolves a bona fide dispute between the parties. In their answer, Defendants generally denied Plaintiff's allegations of wrongdoing and asserted fifteen affirmative defenses, including that Plaintiff was not a "covered" employee pursuant to the FLSA. (*See* ECF No. 13.) The parties also represented that, "[a]t all times," Defendants "disputed [their] liability . . . , asserting that either they are not liable for these payments or that [Plaintiff's] claims were excessive for the hours worked." (ECF No. 30-1 at 4.) Indeed, in the settlement itself, the parties acknowledge the factual disputes between them, "including a dispute regarding whether Plaintiff is exempt from coverage under the FLSA . . . and a dispute concerning the number of hours worked by Plaintiff." (ECF No. 34-1 at 2.) Despite these disagreements, the parties reached a settlement that avoids the cost and time-consuming nature of litigation. As a result, the Court finds that the settlement resolves a bona fide

dispute. *See Vidal v. Paterson Car Emporium LLC*, Civ. No. 19-12711, 2023 WL 238825, at *2 (D.N.J. Jan. 18, 2023) ("In light of the stark contrast between the parties' factual positions, the Court finds that their dispute is bona fide.").

### B.  Fair and Reasonable to Plaintiff

In assessing whether the parties' compromise is fair and reasonable to Plaintiff, many of the factors set forth in *Girsh v. Jepson* are informative.[5]  There, the United States Court of Appeals for the Third Circuit set forth a non-exhaustive list of factors that weigh on the fairness of an FLSA settlement, such as

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .
>
> [*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).]

As other courts have noted, these "factors are a guide and the absence of one or more does not automatically render the settlement unfair." *Alves v. Main*, Civ. No. 01-789, 2012 WL 6043272, at *9 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).  Accordingly, "the Court must

---

[5]       Although *Girsh* was decided in the context of a class action, courts have also considered its factors when evaluating single-plaintiff claims pursuant to the FLSA. *See, e.g.*, *Vidal*, 2023 WL 238825, at *3; *Guerrero v. Town Square Adult Med. Day Care Ctr. Corp.*, Civ. No. 20-14344, 2022 WL 16838454, at *2 (D.N.J. Nov. 9, 2022) ("The Court has considered the factors set forth in *Girsh v. Jepson* . . . and finds that the settlement reflects a fair and reasonable compromise of disputed issues.").

look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness." *Id.* (citing *AT&T Corp. Secs. Litig.*, 455 F.3d 160 (3d Cir. 2006)).

With respect to the first, third, fourth, fifth, and seventh *Girsh* factors,[6] the parties reached their settlement after more than a year of litigation, the commencement of formal discovery, and following hard-fought negotiations over the settlement's terms amongst experienced counsel. (ECF No. 30-7 at 1.)  The parties exchanged information related to time worked, payroll records, and related documents (*id.* at 2), which provided Plaintiff the opportunity to assess the strengths and weaknesses of his claims and the risks associated with proceeding to trial.  *See Alves*, 2012 WL 6043272, at *9 ("[A] district court should consider whether the settlement is proposed by experienced counsel who reached the agreed-upon terms through arms-length bargaining.").

As for the eighth and ninth *Girsh* factors, the Court must consider "whether the settlement represents a good value for a weak case or a poor value for a strong case."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004).  Here, the parties sharply dispute the viability and strength of Plaintiff's FLSA claims, and the Court is without a sufficient record to fully assess the claims' merits.  That said, the settlement amount — $11,500.00, with $7,130.67 allocated to Plaintiff — is relatively modest but guaranteed.  Conversely, there is no guarantee that Plaintiff would prevail at trial and, even if he did, that Defendants would be able to satisfy a judgment.

On balance, therefore, the Court finds that the proposed settlement is fair and reasonable to Plaintiff.

## C.  Furtherance of FLSA's Implementation

The Court is satisfied that the revised settlement does not frustrate the FLSA's purpose and, in fact, furthers its implementation.  As the Court has noted previously, in determining

---

[6]    The second and sixth factors are inapplicable because this is a single-plaintiff settlement.

whether the compromise furthers the FLSA, district courts scrutinize a proposed agreement's terms, paying particularly close attention to any confidentiality and release provisions. *See Morales*, 2021 WL 5864061, at *3 ("[T]erms which Third Circuit courts have found problematic in effectuating the FLSA's purposes . . . [include] a restrictive confidentiality clause or an overly broad release provision." (citations omitted)). The reason release provisions in FLSA settlements are so closely examined is because "[w]hile workers seeking to recover backpay may be willing to waive unknown claims in order to access wrongfully withheld wages as soon as possible," the role of the courts is to shield those same workers from being subject to "a pervasive release . . . [that] confers an uncompensated . . . [and] unfair benefit on the employer." *Brumley v. Camin Cargo Control, Inc.*, Civ. No. 08-1798, 2012 WL 1019337, at *8 (D.N.J. Mar. 26, 2012) (quoting *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1284 (M.D. Ala. 2011)).

In the parties' original proposed settlement, the agreement's release provision waived "any and all claims . . . arising under any federal, state, or local wage and hour or labor laws, regulations or executive orders" as well as "any and all claims . . . under any contract." (ECF No. 30-2 at 4.) The Court flagged that such a broad release not limited to the alleged facts in the action being settled or to wage-and-hour claims specifically is often rejected by district courts in this Circuit. *See, e.g.*, *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 659-60 (E.D. Pa. 2020) ("The broad release of claims that includes unrelated claims and claims unknown to the plaintiff frustrates the purpose of the FLSA by allowing employers to use their superior bargaining power to disadvantage FLSA claimants."); *see also Rhee v. Super King Sauna NJ, LLC*, Civ. No. 20-9921, 2021 WL 3550221, at *2 (D.N.J. Aug. 9, 2021) ( the court initially rejected a "general release provision" and then approved the settlement after the parties "narrowed the release to only wage related claims").

In the revised settlement, the parties amended the release to be limited to "all causes of action and claims which were alleged in the Complaint filed in the action, specifically including Fair Labor Standards Act and New Jersey Wage and Hour Law," and to make clear that this release does not interfere with Plaintiff's "rights under federal, state, or local civil rights or employment discrimination laws . . . to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation." (ECF No. 34-1 at 4-5.)

The language in the revised settlement is acceptable to the Court because it "does not release unrelated claims." *Kress v. Fulton Bank, N.A.*, Civ. No. 19-18985, 2021 WL 9031639, at *13 (D.N.J. Sept. 17, 2021), *report and recommendation adopted*, 2022 WL 2357296 (D.N.J. June 30, 2022). The parties have appropriately narrowed the release to encompass only unpaid wage claims related to the causes of action alleged in the Complaint, ensuring it is not unduly restrictive.

Accordingly, the Court finds that the proposed settlement agreement does not frustrate the purposes of the FLSA.

**D.      Attorney's Fees and Costs**

Finally, having determined that the parties' proposed settlement agreement is fair and reasonable, the Court turns to the request for attorneys' fees and costs. *See* 29 U.S.C. § 216(b) (in approving FLSA settlement, a court may "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").

In the Third Circuit, courts evaluate whether an attorney's fee is reasonable through either the percentage-of-recovery approach or the lodestar formula. *See, e.g., Cruz v. JMC Holdings, Ltd.*, Civ. No. 16-9321, 2019 WL 4745284, at *8 (D.N.J. Sept. 30, 2019) (using the percentage-

of-recovery method); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2011) (noting use of the lodestar formula).  Under the percentage-of-recovery method, "courts award attorneys' fees as a percentage of the total fund recovered."  *Morales*, 2021 WL 5864061, at *2.  Under the lodestar formula, "courts 'multiply[] the number of hours reasonably expended by a reasonable hourly rate.'"  *Id.* (quoting *Loughner*, 260 F.3d at 177).

Here, Plaintiff's counsel seeks $4,369.33, comprised of $3,565.33 in fees and $804.00 in costs.  (ECF No. 34-1 at 3).  The amount in just fees sought represents around 31 percent of the $11,500.00 total settlement amount (fees and costs is about 38 percent), which courts have permitted in the FLSA context.[7]  *See Guerrero v. Town Square Adult Medical Day Care Center Corporation*, Civ. No. 20-14344, 2022 WL 16838454, at *3 (D.N.J. Nov. 9, 2022) (approving attorney's fee representing "just under 40% of the total settlement amount," while noting it "approache[d] the upper boundary of what is considered reasonable"); *Pullinger v. Arther R. Todd Electrical Contractor, Inc.*, Civ. No. 22-00268, 2022 WL 4974816, at *3 (D.N.J. Oct. 4, 2022) ("The resulting thirty-six percent award . . . is consistent with the award of attorneys' fees in FLSA in the Third Circuit."); *In re Chickie's & Pete's Wage & Hour Litig.*, Civ. No. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) ("Fee awards have ranged from 19 percent to 45 percent of the settlement fund.").

The lodestar approach further confirms that the amount sought is reasonable under the circumstances of this case.  Counsel seeks reimbursement for 68.3 hours of work, an amount of time which allegedly reflects the litigation and negotiations that culminated in the parties'

---

[7]     If the settlement amount were larger, ordinarily the percentage of the settlement dedicated to fees and costs should be smaller.  *See, e.g., Cruz*, 2019 WL 4745284, at *8 ("the percentage awarded to class counsel should increase as the size of the fund decreases").

settlement.  The billing statements in the record demonstrate that work was performed by four associates, a law clerk, and a bilingual paralegal with varying degrees of experience.  The hourly rate billed for associates was around $300, the law clerk was $275, and the paralegal was $175. (*See* ECF No. 30-1 at 7-8; ECF No. 30-4 at 1-12.)  Similar rates for associates have been found reasonable by courts in this district.[8]  *See Santiago v. Lucky Lodi Buffet Inc.*, Civ. No. 15-6147, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (approving hourly rate of $375 for associate with four years of employment law experience); *Punter v. Jasmin Int'l Corp.*, Civ. No. 12-7828, 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014) (approving hourly rate of $300 for associate with two years of employment law experience).  Without too closely scrutinizing the billing statement, simply multiplying 68.3 hours by $300 per hour yields a total above $20,000.00, which significantly exceeds the $3,657.86 sought by counsel for fees.  Even accounting for the fact that some of the work billed was done by the law clerk and paralegal as well as accounting for the fact that some billing entries might be questioned,[9] the Court finds the requested attorney's fee amount reasonable under both the percentage-of-recovery approach and the lodestar formula.  The costs also appear to be consistent with what would be expected litigation costs.  Accordingly, the Court approves Plaintiff's counsel's request for fees and costs in the amount of $4,369.33.

---

[8]     The Court does not rule on the reasonableness of the rate for the law clerk, seeing as it appears the clerk billed less than an hour in total on the case.  (ECF No. 30-4 at 4.)

[9]     For example, $210 was billed on January 17, 2022, for a search of the "drop box folder and leap to locate docs."  (ECF No. 30-4 at 3.)  $90 was billed on May 10, 2022, for "try[ing] to find physical folder."  (*Id.* at 6.)

IV.    **CONCLUSION**

For the reasons set forth above, the parties' joint motion for approval of their revised settlement agreement (*see* ECF No. 34-1 at 1-8) is **GRANTED** and the settlement is **APPROVED**. An appropriate Order follows.

Date: June 20, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE